ALFRED V. HUARD vs. FOREST STREET HOUSING, INC.

Middlesex.    May 13, 1974. — September 3, 1974.

Present: TAURO, C.J., REARDON, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Rent Control. Cambridge. Municipal Corporations,* Rent control.
*Constitutional Law,* Rent Control, Obligation of contracts. *Statute,*
Retroactive statute. *Practice, Civil,* Stipulation.

Upon the adoption of the Rent Control Act, St. 1970, c. 842, by a
municipality, the rent "rollback" provision of c. 842, § 6, applies to all
"controlled rental units" within the meaning of c. 842, § 3, including
units held under leases executed prior to the enactment of
c. 842. [206-208]

Application of the rent "rollback" provision of St. 1970, c. 842, § 6, to
leases executed prior to its enactment, does not violate the prohibi-
tion of art. 1, § 10, of the Constitution of the United States against
impairing the obligation of contracts. [206-208]

Statute 1970, c. 842, § 11 (a), permits a tenant to recover amounts paid
to a landlord in excess of the maximum lawful rent, without regard to
any common law right of the tenant to do so. [208]

Where an action was tried on a stipulation of facts which omitted
seemingly significant information of which this court was aware
because of earlier litigation, the stipulation was set aside and the case
was remanded to the Superior Court. [208]

Inasmuch as, following acceptance of the Rent Control Act, St. 1970,
c. 842, by a municipality, its rent control administrator had no author-
ity to issue an order attempting to delay implementation of the rent
"rollback" provision of c. 842, § 6, for a month, receipt of payment for
that month in excess of the "rollback" rent by a landlord purportedly
relying on the order constituted an overpayment in violation of the
act. [209]

An action to recover an overpayment of rent retained in violation of the
Rent Control Act, St. 1970, c. 842, must be brought within one year of
the violation in accordance with c. 842, § 11 (c), inasmuch as the right
arises exclusively under the statute. [209-210]

The decision of this court in *Rent Control Bd. of Cambridge* v. *Gifford,*
362 Mass. 870 (1973), that the rent control board of Cambridge "may
inform tenants and landlords that rent adjustments made by its
predecessor are null and void" did not of itself establish that
authorizations made by the predecessor were void ab initio nor

automatically require landlords to refund rent increases collected pursuant to such authorizations. [210-211]

TORT AND CONTRACT. Writ in the Third District Court of Eastern Middlesex dated April 28, 1972.

Upon appeal to the Superior Court, the action was heard by *Adams, J.*

*Philip S. Shaw* for the plaintiff.

*Herbert S. Lerman* for the defendant.

WILKINS, J.    The plaintiff, a former tenant of the defendant, appeals from a finding for the defendant in an action for the return of a security deposit, for refund of allegedly excessive rent payments, and for attorney's fees and "liquidated damages" under St. 1970, c. 842 (hereinafter called the Rent Control Act).[1] This action was tried on a brief stipulation of facts.

In July, 1970, the plaintiff (the tenant) entered into a written lease of an apartment in Cambridge owned by the defendant (the landlord). The term of the lease was thirteen months, from August 1, 1970, through August 31, 1971. The lease provided for rent of $200 a month, payable in advance on the first of the month, and contained a so called tax escalation clause. The lease also provided for the payment of a security deposit of $200 to be returned to the lessee, if certain conditions existed, after the termination of the lease and the vacating of the premises by the lessee.

The city of Cambridge adopted rent control on September 17, 1970.[2] The leased premises were a "controlled rental unit" under the Rent Control Act. St. 1970, c. 842, § 3. The so called "rollback rent" for the premises (the rent charged in March, 1970) was $175.[3] In October, 1970, the then

---

[1] By stipulation the parties to three other appeals, presumably involving claims of similarly situated tenants of the same landlord, have agreed that their appeals will be determined by application of this decision.

[2] By St. 1970, c. 842, § 2, the act took effect on the thirtieth day following acceptance of its provisions." Thus the tenant's November rent obligation was the first arguably subject to the Rent Control Act.

[3] Statute 1970, c. 842, § 6, provided generally that the maximum rent which could be charged was "the rent charged the occupant for the month six months prior to the acceptance of this act by a municipality."

temporary rent administrator ordered "that the rollback rent not be implemented in Cambridge until December 1, 1970."[4]

"In November, 1970, . . . [the tenant] paid the lease amount of rent ($200)." We construe this stipulation as agreeing that the rent paid for November, 1970, was $200. From December, 1970, through April, 1971, inclusive, the tenant paid the "rollback rent" of $175. On April 29, 1971, following a hearing, the Cambridge rent administrator "adjusted the maximum rent to $209 per month, effective May 1, 1971." The tenant did not petition for review of that determination. The tenant paid rent of $200 for the months of May through August, 1971, inclusive. The tenant vacated the premises when his lease expired at the end of August, 1971, leaving the premises undamaged.

At the end of September, 1971, the landlord sent the tenant a letter claiming $44 under the tax escalation clause in the lease and suggesting that an additional amount of $466 might be owing if a court ruling, then on appeal, were sustained. That ruling was described as stating that the rent "rollback provision" of the Rent Control Act did not apply to leases entered into before the effective date of the Rent Control Act.[5] The landlord suggested that the tenant compromise the amount of $466 by paying $366, with the security deposit applied against the tenant's obligation. The stipulation does not advise what, if any, response the tenant made to this suggestion. This action was commenced in April, 1972, in the Third District Court of Eastern Middlesex.

The tenant sought return of the security deposit (and a key deposit which is not in issue here); claimed a right to a

---

[4] The tenant argues outside the stipulation that this order was revoked by an order dated November 24, 1970. The second order was referred to in *Marshal House, Inc.* v. *Rent Control Bd. of Brookline,* 358 Mass. 686, 708 (1971), where a companion case involving Cambridge rent control was also considered.

[5] The additional amount claimed cannot be verified on the record as the unpaid rent differential attributable to the "rollback" of rent. Three hundred fifty dollars was inexplicably attributed to "Rent Differential" and the balance of the $466 to amounts due under the tax escalation clause in addition to the $44 then expressly claimed under that clause.

refund of the difference between the rent paid in November, 1970, and May, June, July, and August, 1971 ($200 a month), and the maximum allowable under the "rollback" provisions of the Rent Control Act ($175 a month); and sought attorney's fees and costs plus liquidated damages of three times the amount of the security deposit (and the key deposit).

The District Court judge found for the landlord on the ground that the "rent rollback" provisions of the Rent Control Act (St. 1970, c. 842, § 6) could not apply to a lease which was entered into prior to the enactment of the Rent Control Act and its effective date in Cambridge. He concluded that amounts due under the lease exceeded the amount of the security deposit. On appeal to the Superior Court (G. L. c. 231, § 97), a finding for the landlord was made on all counts. The case comes here by appeal under G. L. c. 231, § 96.

1. In support of the Superior Court finding, the landlord argues first that the "rollback" provisions of the Rent Control Act do not apply to leases executed prior to the enactment of the Rent Control Act and that, if those provisions did so apply, they would violate the prohibition of art. 1, § 10, of the Constitution of the United States against impairing the obligation of contracts.

It is clear that the intent of the Rent Control Act is that all "controlled rental units" (St. 1970, c. 842, § 3) in a municipality shall be subject to its terms immediately on the effectiveness of the Rent Control Act in that municipality. Any less pervasive and immediate impact would be inconsistent with the purpose of rent control and would lead to the inequitable result that some tenants would have their rents "rolled back" and others would not, depending solely on when they entered into their particular leases. Chapter 842 was adopted with an emergency preamble and contains a declaration of emergency in its first section. The Legislature said that a "serious public emergency" had been created and had resulted in "a substantial and increasing shortage of rental housing accommodations for families of low and moderate income and abnormally high

rents" and that the emergency should be met immediately. St. 1970, c. 842, § 1.

The landlord relies on cases which hold that, barring a contrary intention appearing from necessary implication, statutes affecting substantive rights are to be construed as operative only prospectively. See *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1, 3 (1914); *Yates* v. *General Motors Acceptance Corp.* 356 Mass. 529, 531 (1969); *Hein-Werner Corp.* v. *Jackson Indus. Inc.* 364 Mass. 523, 525 (1974). Because of what we have concluded concerning the Legislature's intention that the Rent Control Act have full and immediate effect, our holding is fully consistent with this line of cases.[6] We turn then to the question whether the Rent Control Act as so interpreted violates the constitutional prohibition against the impairment of the obligation of contracts.

Where a public emergency in housing exists, the Supreme Court of the United States has held that any rights contained in a private contract must yield to rational legislative protection of the public interest. *Block* v. *Hirsh,* 256 U. S. 135, 156-157 (1921). *Marcus Brown Holding Co. Inc.* v. *Feldman,* 256 U. S. 170, 198 (1921). *Edgar A. Levy Leasing Co. Inc.* v. *Siegel,* 258 U. S. 242, 248-249 (1922). *Fleming* v. *Rhodes,* 331 U. S. 100, 106-107 (1947). Cf. *Home Bldg. & Loan Assn.* v. *Blaisdell,* 290 U. S. 398, 440-441 (1934); *California Teachers Assn.* v. *Newport Mesa Unified Sch. Dist.* 333 F. Supp. 436, 444 (C. D. Cal. 1971) (wage freeze). See *Russell* v. *Treasurer & Recr. Gen.* 331 Mass. 501, 507 (1954); *Israel* v. *City Rent & Rehabilitation Admn. of the City of New York,* 285 F. Supp. 908 (S. D. N. Y. 1968). In a situation not significantly different from that before us, the Court of Appeals of New York sustained the application of a rent control act to pre-existing leases,

---

[6] The application of the Rent Control Act only to rents payable after its effectiveness in a municipality in one sense involves no aspect of retroactivity. The act does not require the refund of rent paid before the act's effectiveness in a municipality. The only retroactive aspect is that the act undertakes to regulate future rental payments on all leases of "controlled rental units" entered into prior to the act's effective date.

rejecting a claim that the statute was an unconstitutional impairment of the obligation of contracts. *Twentieth Century Assoc. Inc.* v. *Waldman,* 294 N. Y. 571 (1945), app. dism. 326 U. S. 697 (1946). Cf. *DePaul* v. *Kauffman,* 441 Pa. 386, 398-399 (1971).

The Rent Control Act was enacted as a temporary measure to be effective only until April 1, 1975 (St. 1970, c. 842, § 13). Rents regulated by the Rent Control Act are subject to adjustment by administrative action (§ 7), which in turn is subject to judicial review (§ 10). No argument is made by the landlord that an emergency did not exist justifying the imposition of rent control with respect to the landlord's premises in Cambridge.

We hold that the "rollback" provisions of the Rent Control Act do not unconstitutionally impair the obligation of leases entered into prior to the effective date of the Rent Control Act. See *Marshal House, Inc.* v. *Rent Control Bd. of Brookline,* 358 Mass. 686, 700-702 (1971), upholding St. 1970, c. 842, against challenges based on the denial of equal protection and due process of law.

2. The landlord next claims that the tenant may not recover any excess rental payments because those payments were made voluntarily, without fraud, concealment, or compulsion, and with full knowledge of the facts in response to the landlord's claim that he had a right to those payments. See *Carey* v. *Fitzpatrick,* 301 Mass. 525, 527 (1938). We do not pause to consider this question in the sense of the tenant's common law right to recover amounts voluntarily paid to the defendant. The Rent Control Act itself provides that "[a]ny person who demands, accepts, receives or retains any payment of rent in excess of the maximum lawful rent" shall be liable for reasonable attorney's fees, costs, and liquidated damages. St. 1970, c. 842, § 11 (a). There is therefore a clear statutory remedy which permits a tenant to recover amounts paid to a landlord in excess of the maximum lawful rent.

3. We come then to the question whether rent was received in excess of the maximum lawful rent. The stipulation of facts omits seemingly significant information

concerning the action of the rent regulatory agency in Cambridge, facts of which we are in part aware because of earlier litigation in this court. The tenant relies on certain of these facts. If they had been stated in the stipulation, perhaps the landlord would have pressed for the inclusion of additional assertedly mitigating or explanatory facts. Because we believe justice would best be served by permitting the tenant to rely on administrative events outside the stipulation, provided the landlord is given the right to offer additional evidence, we set aside the stipulation and remand the case to the Superior Court for further proceedings. See *Loring* v. *Mercier,* 318 Mass. 599, 601 (1945); *Commonwealth* v. *Clark,* 350 Mass. 721, 722 (1966).

In the further consideration of this case, these observations may be helpful:

(a) *The November, 1970, rent payment.* The November, 1970, rent payment of $200 exceeded the "rollback" rent by $25. The Rent Control Act does not permit the local rent control board or administrator to delay its effectiveness. The attempt of the temporary rent administrator to order the "rollback" of rent to be effective on December 1, 1970, and not (in the circumstances involved here) on November 1, 1970, appears to have been without lawful support. His apparent revocation of that order in November, 1970 (see fn. 4 above), makes even less justifiable any purported reliance by the landlord on the temporary administrator's attempted moratorium. In any event, there seems to have been a $25 overpayment of rent with respect to November, 1970, which the landlord appears to have retained in violation of the Rent Control Act. However, the tenant is not entitled to recover this apparent overpayment because suit was not commenced until April, 1972. An action to recover liquidated damages must be brought no later than one year after the date of the violation. St. 1970, c. 842, § 11 (c). The amount of the overcharge is included within the liquidated damages for which a landlord may be liable. St. 1970, c. 842, § 11 (c). In this respect the language of § 11 (c) was adopted from Federal rent control statutes under which recovery of not only treble damages but also of

the overcharge has been barred if the suit was commenced more than one year after the violation. See *Hogan* v. *Coleman,* 326 Mass. 770, 776 (1951). The tenant's rights arise exclusively under the Rent Control Act and are limited to the remedy made available by that act. See *Hogan* v. *Coleman, supra; Meyercheck* v. *Givens,* 180 F. 2d 221, 223 (7th Cir. 1950); *United States* v. *Steagall,* 88 F. Supp. 98, 103-104 (N. D. Texas 1950).

(b) *The May through August, 1971, rent payments.* For the months of May through August, 1971, inclusive, the tenant paid rent of $200 each month. There was an order of the rent administrator which authorized the receipt of that amount.[7] Such an order, as to which the tenant did not seek judicial review under St. 1970, c. 842, § 10, would appear on its face to justify the collection of rent of $200 a month during the months as to which the order was applicable.

The tenant argues, however, that our rescript opinion in *Rent Control Bd. of Cambridge* v. *Gifford,* 362 Mass. 870 (1972), decided June 27, 1972, held that the various rent adjustments permitted by the Cambridge rent control administrator were invalid. He urges that our direction that a decree be entered declaring that the rent control board of Cambridge "may inform tenants and landlords that rent adjustments made by its predecessor are null and void" means that the various authorizations for rent increases were null and void from the beginning, thus requiring refunds by landlords of additional amounts previously collected pursuant to unappealed orders granting rent increases.

The stipulation of facts gives no information which would show that the rent order concerning the landlord's premises was affected by the invalidity of the rent adjustments at issue in *Rent Control Bd. of Cambridge* v. *Gifford, supra.* In that case no consideration was requested of or given to the effect on prior approved rent increases of the

---

[7] The order, in fact, authorized a monthly rental of $209. The lease itself, except for amounts due for increased local taxes, limited the collectible monthly rent to $200.

invalidity of all rent determinations of the Cambridge rent control administrator. Even if the administrator's determinations were invalid ab initio, it would seem that landlords who had obtained increases pursuant to improper criteria would have been entitled to redeterminations pursuant to proper standards. The stipulation of facts in the present case, which was filed more than five months after our decision in *Rent Control Bd. of Cambridge* v. *Gifford, supra,* is totally silent on the administrative treatment of the consequences of our decision in that case.

(c) *The security deposit.* The tenant appears to be entitled to recover the security deposit of $200. He claims, however, that he may recover treble damages under the liquidated damages provision of § 11 (a). Security deposits are generally regulated by G. L. c. 186, § 15B.[8] A security deposit is not rent. See *Whittier* v. *Goldberg,* 274 Mass. 335, 337 (1931). However, § 11 (a) of the Rent Control Act provides for civil remedies where any person "demands, accepts, receives or retains any payment of rent in excess of the maximum lawful rent." A landlord may demand rent in excess of the maximum lawful rent and may treat all or part of a security deposit as rent retained in such a way that he has violated § 11 (a) of the Rent Control Act. On this record, however, it is not clear that the landlord made such a demand for rent or treated the security deposit as rent in violation of § 11 (a). We do not know what, if anything, occurred between the landlord and the tenant after the landlord wrote the tenant suggesting a compromise.[9]

4. Because for the reasons given the stipulation of facts in this case has been set aside, the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[8] See St. 1969, c. 244, § 1, for G. L. c. 186, § 15B, as applicable at the time the tenant commenced this proceeding and St. 1972, c. 639, for G. L. c. 186, § 15B, as applicable to security deposits held by a landlord on January 1, 1973.

[9] We note that under G. L. c. 186, § 15B, as now amended, a landlord anywhere in the Commonwealth shall be liable for double damages for improper failure to return a security deposit (or an appropriate portion of it) within the time limits provided in that section.