**Max R. KARGMAN et al., Plaintiffs, Appellants,**

v.

**Thomas A. SULLIVAN et al., Defendants, Appellees.**

**No. 77–1559.**

United States Court of Appeals, First Circuit.

Argued June 5, 1978.

Decided Aug. 22, 1978.

Richard F. McCarthy, Boston, Mass., with whom Willcox, Pirozzolo & McCarthy, Boston, Mass., was on brief, for appellants.

Thomas H. Martin, Boston, Mass., with whom Mason & Dangel, Boston, Mass., was on brief, for appellees City of Boston and Boston Rent Board.

Mark D. Stern and Brian Michael Olmstead, Boston, Mass., with whom Stern & Zack, Boston, Mass., was on brief for intervenors, appellees.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

We held last year that the plaintiffs, who were owners of apartments subsidized and financed under § 221(d)(3) of the National Housing Act, 12 U.S.C. § 1715*l*(d)(3), were not immune by virtue of the Supremacy Clause from Boston rent control during certain years in 1970. *Kargman v. Sullivan*, 552 F.2d 2 (1st Cir. 1977). We concluded that,

> "the [Supreme] Court would deem applicable, at least in the absence of a clear position by HUD, the principle of preferring cooperation to that of ousting the local regulatory scheme."

*Id.* at 13.[1] Since the district court had not reached the plaintiffs' claims under the Contract Clause and the Equal Protection Clause, we remanded for consideration of these issues. Further proceedings then took place, and this appeal is from the district court's denial of plaintiffs' Contract Clause claim.[2]

Article I, § 10 of the Constitution provides, "No state shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." Plaintiffs charge that Boston rent control impaired rights under a contract with the FHA into which they had entered as participants in the § 221(d)(3) BMIR (Below Market Interest Rate) housing program. In this contract, plaintiffs agreed to make available to tenants accommodations built with federal aid at charges not exceeding those approved by the Federal Housing Commissioner; and the Commissioner in turn agreed that he

> "will at any time entertain a written request for a rent increase properly supported by substantiating evidence and within a reasonable time shall:
>
> (1) Approve a rent schedule that is necessary to compensate for any net increase, occurring since the last approved rental schedule, in taxes (other than income taxes) and operating and maintenance expenses over which owners have no effective control, or
>
> (2) Deny the increase stating the reasons therefor."

As a consequence of Boston rent control, plaintiffs say they received significantly less than the FHA-approved rents, resulting in diminution of their rights under the contract with the FHA. Not only did the local Board on occasion insist upon lower rents than the FHA, but the additional proceedings allegedly delayed the securing of rent increases forcing plaintiffs to accept lower rents for a longer period. Plaintiffs acknowledge that the Contract Clause does not absolutely forbid any impairment of obligations if the public interest so requires, but argue that where the owners were limited, as here, by HUD regulation [3] to a 6% return on invested equity and hence precluded from taking unconscionable advantage of market conditions, local rent control cannot be justified as serving any valid public purpose. In making this argument they lay particular stress upon the recent case of *United States Trust Co. v. New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1976), which, in their view, lays down a stricter standard than has heretofore prevailed for determining the validity of legislation affecting contract rights.

The district court rejected these arguments. It doubted that plaintiffs' contract with the FHA could be read to guarantee a "right" to receive the maximum rent allowed by HUD rent schedules, *citing Stoneridge Apts., Co. v. Lindsay*, 303 F.Supp. 677, 679 (S.D.N.Y.1969).[4] But even assuming such a right existed and that local rent control impaired it, the district court concluded that Boston's rent control fell within the ambit of a state or locality's reserved power to protect the general welfare of the people. *El Paso v. Simmons*, 379 U.S. 497, 508, 85 S.Ct. 577, 13 L.Ed.2d 446 (1965), *quoting East New York Savings Bank v. Hahn*, 326 U.S. 230, 232, 66 S.Ct. 69, 90 L.Ed. 34 (1945). The court pointed to two Supreme Court cases decided in the 1920's upholding rent control as a reasonable exer-

---

1. HUD later issued a regulation declaring that the § 221(d)(3) housing program preempted local rent control. 24 C.F.R. §§ 403.1 *et seq.* Our decision in *Kargman v. Sullivan*, 552 F.2d 2 (1st Cir. 1977), dealt with the issue of preemption only in the period prior to the time that HUD took an unequivocal stance on the subject.

2. Plaintiffs do not press their appeal from denial of their Equal Protection claim.

3. 24 C.F.R. § 221.532(a).

4. Plaintiffs distinguish *Stoneridge* on the ground that it related only to federally insured housing which contains no 6% or other limitation on the landlord's return. They concede that rent control might be necessary and proper if an unlimited return were allowed under the program at issue, citing HUD's own Local Rent Control Regulations, 24 C.F.R. §§ 403.1 *et seq.*, which announce preemption only in the field of § 221(d)(3) BMIR and § 236 housing where dividends are federally regulated.

cise of the police power. *Block v. Hirsh*, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865 (1921); *Marcus Brown Co. v. Feldman*, 256 U.S. 170, 41 S.Ct. 465, 65 L.Ed. 877 (1921). It also cited a recent decision of the Massachusetts Supreme Judicial Court, *Huard v. Forest Street Housing, Inc.*, 366 Mass. 203, 316 N.E.2d 505 (1974), sustaining Boston's rent control against a Contract Clause challenge.

Finally the district court discussed plaintiffs' argument that *United States Trust Co. v. New Jersey, supra*, supports a finding of a Contract Clause violation here. The Court indicated in that case that legislation impairing contract rights is unconstitutional unless it is reasonable and necessary to serve an important public purpose. 431 U.S. at 25, 97 S.Ct. 1505. Focusing on the concept of necessity, plaintiffs contend that the two prior Supreme Court cases, *Block v. Hirsh* and *Marcus Brown*, are "entirely inapplicable" here as they involved private housing where there was "no built-in mechanism by which tenants would be protected from unconscionable profit taking in an emergency housing shortage situation." Rent control was thus necessary under those conditions. Under § 221(d)(3), on the other hand, owners are prohibited from receiving excess profits, being limited to a return of not more than six percent of their equity investment. 24 C.F.R. § 221.532(a). Plaintiffs say, "there is no way in which the City of Boston can justify that rent control is 'necessary' for Section 221(d)(3) BMIR housing."

The district court did not believe that *United States Trust* was of assistance to plaintiffs. It said,

"The issue which faced the Supreme Court in *United States Trust Company* was different from that presently facing this court. The Supreme Court was asked to determine whether the contract clause barred subsequent modification or elimination by a state of its own contractual financial obligations. In the instant case, this court must determine what is constitutionally permissible under the contract clause when contracts between private parties [14] are involved."

"14 Although one of the contracting parties involved in the present action is the federal government, the governmental action being challenged is that of the state and city governments. Thus for purposes of this case, the federal government is essentially acting as a private party."

The district court read *United States Trust* to state that when by later legislation a state subverts its own financial obligations, courts will not readily defer to the legislative determination of reasonableness and necessity, "because the State's self-interest is at stake." 431 U.S. at 26, 97 S.Ct. at 1520. The district court held that when private contracts are at issue, however, courts will exercise such deference.

On appeal, we confront essentially the same arguments as were made below. We find *Block v. Hirsh*,[5] *Marcus Brown*, and the line of earlier Contract Clause cases referred to in the district court's decision to be dispositive, unless *United States Trust* requires us to reach a different result.

That case seems to us, as it did to the district court, to rest on its own, quite distinguishable, facts. At issue was the "outright repeal" by the legislatures of New York and New Jersey of a covenant which the Court found was "an important security provision" for purchasers of consolidated bonds issued by the Port Authority of New York and New Jersey. 431 U.S. at 19, 97 S.Ct. at 1516[6]. Stating that only

---

**5.** In *Block v. Hirsh*, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865 (1921), the regulatory provisions of a federal rent control act were challenged as a taking of property without due process of law in violation of the Fifth Amendment. The Contract Clause, by its terms, applies only to the states and therefore was not invoked in *Block*. The Supreme Court, however, has interpreted the Fifth Amendment as the "federal counterpart" of the Contract Clause, imposing restrictions on Congress' ability to interfere with private and public contracts. *United States Trust Co. v. New Jersey*, 431 U.S. at 54 n. 16, 97 S.Ct. 1505 (Brennan, J., dissenting); the *Sinking-Fund Cases*, 99 U.S. 700, 718–19, 25 L.Ed. 496 (1879).

**6.** The covenant limited the ability of the Port Authority to subsidize rail passenger transportation from revenues and reserves pledged as security for the bonds.

once in this century had the Court upheld the alteration of a municipal bond contract and then under far less serious circumstances, *id.* at 27–28, 97 S.Ct. at 1520–1521, a bare majority of the Court ruled that the repeal of the bond security provision violated the Contract Clause. In doing so, as Mr. Justice Brennan points out in his dissent, the Court made "clear that it contemplates stricter judicial review under the Contract Clause when the government's own obligations are in issue . . . ." *Id.* at 53, n. 16, 97 S.Ct. at 1534. With respect to *private* contracts the Court acknowledged that states must possess "broad power to adopt general regulatory measures without being concerned that private contracts will be impaired, or even destroyed, as a result." *Id.* at 22, 97 S.Ct. at 1517. True, such general regulatory measures "must serve a legitimate public purpose"; they may not reflect as a policy " 'the repudiation of debts or the destruction of contracts or the denial of means to enforce them' "; and adjustment of contract rights must be "upon reasonable conditions and of a character appropriate to the public purpose justifying" the legislation. *Id., citing and quoting Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 439, 444–47, 54 S.Ct. 231, 78 L.Ed. 413 (1934). But immediately following its statement of these general limitations upon the state's power to impair private contracts, the Court said,

> "As is customary in reviewing economic and social regulation, however, courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure."

431 U.S. at 22–23, 97 S.Ct. at 1517–1518. We think the district court properly interpreted this language as indicating that, with respect to the reasonableness and necessity of laws affecting private obligations, a very substantial if not total deference to legislative judgments is in order. By contrast, when the Court in *United States Trust* considered the subsequent modification of a state's own financial obligations, it stated that "complete deference to a legislative assessment of reasonableness and necessity is not appropriate because the State's self-interest is at stake." *Id.* at 26, 97 S.Ct. at 1519.[7] We think this "dual standard of review." *Id.* at 26, n. 25, 97 S.Ct. at 1519, explains why in *United States Trust* the Court made a detailed inquiry into the reasonableness of, and necessity for, the legislation repealing the earlier bond security provision. There the states had modified their own prior financial obligation. We see nothing in that case, however, to indicate that the Court meant to modify the traditional deference to legislative judgments in cases such as the present where the legislature was not acting to modify its own earlier financial commitments.

■ We accordingly agree with the district court that it is not for the courts to second-guess the necessity of this specific application of Boston's rental control law. The law meets the general criteria for a proper exercise of the locality's reserved powers. It allows "a fair net operating income" to landlords and "a reasonable return on their investment." *Marshal House v. Rent Control Board of Brookline*, 358 Mass. 686, 702–03, 266 N.E.2d 876, 888 (1970). To be sure, the need for local rent control in § 221(d)(3) projects may well have been minimal given the federal controls, but in imposing a rent control law of general application Boston was not constitutionally obliged to exempt all landlords who could demonstrate that they would not take unfair advantage of their tenants. As our earlier opinion indicates, 552 F.2d at 6, HUD itself was unable to make up its own mind in this period as to the desirability of local controls. While from plaintiffs' perspective, they were being expensively and senselessly whipsawed between two regulatory systems both having similar aims, the

---

7. The sentence is followed by reference to the fact that "a governmental entity can always find a use for extra money . . . . If a State could reduce its financial obligations whenever it wanted to spend the money for what it re-garded as an important public purpose, the Contract Clause would provide no protection at all. [25]" In the footnote, the Court further justifies what it terms a "dual standard of review."

Constitution does not necessarily provide a remedy for bureaucratic problems of this type. We find no Contract Clause violation.

Plaintiffs also appeal from the denial of their motion for a new trial. Plaintiffs insist that they have additional evidence to prove that HUD-approved rents were the minimum rent levels needed to ensure that they could carry the projects. This motion was addressed to the district court's discretion, and we find no abuse of that discretion. It could have concluded that plaintiffs had had a reasonable opportunity to offer this type of evidence earlier. Additionally it is not clear that, in the total picture, the evidence would affect the outcome. Boston's rent control law providing for fair net operating income and a reasonable return on investment is not facially confiscatory. Appeals were available to the state courts if rental levels were set too low. Given the power of Massachusetts and its municipalities to legislate for the public welfare, and the deference courts must accord such legislation, we can see no federal purpose in a minute reexamination of how plaintiffs fared under Massachusetts rent control.

The intervenors-appellees request that we award them double costs and attorney's fees under Fed.R.App.P. 38. We feel such a punitive award is inappropriate, as this appeal, though unmeritorious, was not frivolous. It is sufficient that both defendants-appellees and intervenors-appellees recover costs pursuant to Fed.R.App.P. 39.

*Affirmed.*