Mary T. DUFFY, Individually and as
Administratrix of the Estate of
Brendan M. Duffy, Plaintiff, Appellant,

v.

Donald E. CLIPPINGER and William
Y. Ross, Defendants, Appellees
(Two Cases).

Appeal of William Y. ROSS, Defendant.

Nos. 88–1236, 88–1290 and 88–1237.

United States Court of Appeals,
First Circuit.

Submitted Sept. 1, 1988.

Decided Sept. 21, 1988.

Rehearing and Rehearing En Banc
Denied Oct. 19, 1988.

John B. Johnson, John C. Corrigan, Jr., and Corrigan & Johnson, Boston, Mass., on brief for Mary T. Duffy.

Gerald F. Blair and Avery, Dooley, Post & Avery, Belmont, Mass., on briefs for William Y. Ross.

Armand Fernandes, Jr., and Law Office of Armand Fernandes, Jr., New Bedford, Mass., on brief for Sea View Hotel, Inc.

Before CAMPBELL, Chief Judge, BREYER and TORRUELLA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

This appeal raises the question whether the district court was within its discretion when it denied plaintiff's motion for a new trial, after a jury trial at which a late-discovered witness was not allowed to testify. In the special circumstances of this case, we hold that the district court abused its discretion and that a new trial should be held.

This was a diversity action for negligence. A car driven by William Ross struck and killed an intoxicated pedestrian, Brendan Duffy, on Martha's Vineyard. The plaintiff, Duffy's widow, sued Ross for wrongful death, claiming that he was driving negligently. She also sued the Sea View Hotel ("the Hotel"), alleging that its bar had continued to serve drinks to Duffy even when he was intoxicated, thus rendering him less able to protect himself from the oncoming car.[1]

Several days before the trial began, the Hotel's attorney located a previously undiscovered eyewitness to the accident, Peter Caines. At the court's request, Caines was deposed, this not occurring until the afternoon following the second day of the four-day trial. In his deposition testimony, Caines provided a strikingly different account of the accident than that provided by defendant Ross. Where Ross had testified that he was driving at the 20 mile per hour speed limit, Caines estimated that Ross was driving at twice that speed. And where Ross had testified that Duffy fell backward from the side of the road into the path of Ross's car, Caines reported that Duffy was standing near the middle of the road when he was struck.

On the third day of the trial, Ross's attorney objected strenuously to permitting Caines to testify, protesting that Ross had been unfairly surprised and that his trial strategy—now that plaintiff had presented two days of testimony—would be undone. The court agreed that allowing Caines to testify might unfairly prejudice Ross, "in the sense ... not that this witness is against him but unfairly in the sense that he might very well have conducted a different cross-examination of the witnesses that he did cross-examine." In a lobby conference, the Hotel's lawyer suggested that the trial proceed without Caines's testimony, with the understanding that the court would later entertain a motion for a new trial by plaintiff or by the Hotel, if they deemed that to be necessary. Plaintiff agreed with that alternative, and it was adopted by the court. Ross's attorney did not object to this arrangement.

After the four-day trial, the jury returned a verdict assessing damages at $614,000, and finding the following distribution of fault: the Hotel, 60 percent; the decedent Duffy, 40 percent; and the driver Ross, 0 percent. While the jury was deliberating, plaintiff entered into a settlement with the Hotel for approximately $39,000.

Following the verdict, plaintiff moved for a new trial, on account of the exclusion of Caines's testimony. After briefing and a hearing, the district court denied the motion, primarily on the ground that Caines's testimony "is cumulative and that it would not likely effect a different verdict." Plaintiff's motion to reconsider this ruling was also denied. Plaintiff now appeals from these rulings.

---

1. Mrs. Duffy also filed suit against Donald Clippinger, the car's owner. Before trial, the district court dismissed the claim against Clippinger.

A motion for a new trial is addressed to the district court's discretion. The district court's ruling should not be overturned unless the court of appeals finds an abuse of that discretion. *Conrad v. Graf Brothers, Inc.,* 412 F.2d 135, 139 (1st Cir.), *cert. denied,* 396 U.S. 902, 90 S.Ct. 215, 24 L.Ed.2d 178 (1969); *Kargman v. Sullivan,* 582 F.2d 131, 135 (1st Cir.1978).

■ In order to grant a motion for a new trial on the basis of newly discovered evidence, the following elements must be present:

1) The evidence has been discovered since the trial;

2) The evidence could not by due diligence have been discovered earlier by the movant;

3) The evidence is not merely cumulative or impeaching; and

4) The evidence is of such nature that it would probably change the result if a new trial is granted. *Lloyd v. Gill,* 406 F.2d 585, 587 (5th Cir.1969). *See also Conrad v. Graf Brothers, Inc.,* 412 F.2d at 139 n. 5 (citing *Johnson v. United States,* 32 F.2d 127, 130 (8th Cir.1929)).[2]

We examine in turn each of these four elements.

### 1) *The Evidence Must Have Been Discovered Since Trial.*

■ Defendant driver Ross argues that the new evidence in this case was discovered before or during, not after trial, and so there is no basis for a new trial. This argument might well be dispositive if Ross had not opposed allowing the witness to testify at the first trial, then still in progress, and had not failed to object to the court's proposed course that "we continue with the trial without the new witness's testimony, and that I would then entertain a motion for a new trial...." In light of Ross's acquiescence in this procedure—created as a mechanism to allow the court to oblige Ross in his claim of unfair surprise,

and yet preserve for plaintiff her right to have the value of this witness ultimately assessed—we must decline to rely on this element.

### 2) *The Evidence Could Not By Due Diligence Have Been Discovered Earlier by The Movant.*

■ The new witness was discovered not by the present movant (plaintiff Duffy), but by the defendant Hotel. There is no serious question about the Hotel's diligence. At trial, the district court specifically found that "counsel had been diligent, and it was just a fluke that this witness was found late in the game." That the witness was discovered by the Hotel and not by the movant (plaintiff) does not, without more, show that plaintiff was not diligent in her search for witnesses or that she could have found Caines any sooner than did the Hotel.

### 3) *The Evidence Is Not Merely Cumulative Or Impeaching.*

■ Although the district court found Caines's testimony to be merely "cumulative," this judgment is not borne out by the record. There were three eyewitness accounts of the accident presented to the jury: those of William Ross (the defendant driver), Bernard Wagner (a friend of the decedent, who had traveled to Martha's Vineyard with him), and Peter Erickson. The crucial parts of their testimony, as it related to Ross's culpability, concerned the speed at which Ross's car was traveling and the location and movement of the decedent on the road just before he was struck. Also of relevance are the vantage point, observation time, and, in some instances, degree of sobriety of the eyewitnesses at the time they made their observations. The following is a synopsis of the crucial parts of their testimony:

A. William Ross, the defendant driver, testified that he was driving at the speed limit, 20 miles per hour. He said that

---

**2.** A fifth element of the traditional standard is that the evidence "must be material to the issues involved." *Conrad v. Graf Brothers, Inc.,* 412 F.2d at 139 n. 5 (citing *Johnson v. United States,* 32 F.2d at 130). In the case at hand, this element overlaps elements 3) and 4), and so we need not discuss it separately.

Duffy, the decedent, fell backwards from the side of the road into the path of Ross's car. There was only a split second between the time that Ross saw Duffy and the impact.

B. Bernard Wagner, Duffy's companion, was not available at the trial and testified by deposition. Wagner had been drinking with Duffy for many hours—as many as 15 beers and six or seven shots of Jack Daniels and Sambuca—and admitted that he (Wagner) was "tipsy" and "groggy" at the time he observed the accident. He testified that Duffy walked into the middle of Sea View Avenue and was hit as he stood facing the hotel. He estimated that he saw the car travel one car length before it struck Duffy. His testimony about the speed of the car was not presented to the jury, presumably on the ground that it was incompetent. (He said, "From the sound of him getting hit, he sounded like it was going fast" and then estimated the speed at 40 miles per hour.)

C. Peter Erickson testified that he was facing away from the street, but that he wheeled around when he heard the sound of squealing tires or brakes. He saw Duffy taking a step or two near the middle of the road just before he was struck. After Erickson had testified, the district court—in a conversation with the attorneys outside the presence of the jury—noted that Erickson had a "rather faulty and spotty memory of the events."

In order to decide whether the testimony of the newly discovered witness, Peter Caines, is "merely cumulative or impeaching," we must compare the testimony in his deposition to the three eyewitness accounts summarized above.

Peter Caines testified that he was leaning against a car on the side of the road when he saw Ross's car coming "very fast." He observed the car continuously as it traveled more than a block, and he estimated its speed at 40 to 45 miles per hour. He also saw the decedent Duffy walking diagonally across the road. He reports that Duffy was close to the center of the road when he was struck. Caines had drunk two to three glasses of wine at the

Sea View bar, and had earlier drunk another two to three glasses of wine and a glass of champagne at a wedding reception. Caines described himself as "fairly sober" when he made his observations.

Caines's testimony cannot, especially in the unusual circumstances of this case, be fairly viewed as "merely cumulative or impeaching." First, his testimony is totally at odds with that of the defendant Ross. Second, he had a much better view of the accident than did either Wagner or Erickson. Third, he is the only witness, aside from Ross himself, who can report on Ross's speed with any degree of credibility. Fourth, he is a relatively disinterested witness. Ross was the driver of the car, and Wagner was the friend of the decedent. Caines's only "interest" is that he—like Erickson—was an acquaintance of the Hotel's owner. Considering all this, Caines's testimony, far from being merely cumulative or impeaching, seems to cast significant new light on the events of the accident.

4) *The Evidence Would Probably Produce A Different Result.*

█ Given our conclusion that Caines's testimony was not merely cumulative or impeaching, it seems quite likely that it would produce a different result. On the basis of the conflicting testimony that it received from Ross, Wagner, and Erickson, the jury decided that Ross was not culpable in the accident to any degree at all. This conclusion came despite a police officer's testimony that physical evidence (tire marks) suggested that Duffy was struck near the center of the road and that he was thrown 35 feet through the air (suggesting a speed at impact in excess of Ross's claimed 20 miles per hour). While this conflicting evidence may have made the question of Ross's liability a close one for the jury, the addition of Caines's testimony could well lead a jury to a different result.

In its memorandum of decision, the district court expresses skepticism about Caines's credibility. The district court refers to the quantity of wine that Caines had drunk. It added, "[Caines's] testimony

as to the speed of the car is suspect because he made the estimate as the car was coming toward him, because of the very limited time he had to observe the car, and because his judgment of distances is seriously flawed (he estimated the length of a car to be eighteen feet)." After reviewing Caines's deposition, in conjunction with the testimony of the other eyewitnesses, we believe that the district court was unduly skeptical. Caines had the best view of the entire accident of any of the eyewitnesses, and his recollections are precise enough to be credited. Moreover, the car was not coming directly toward him, but at an angle to his plane of vision. In addition, as plaintiff points out, Caines was exactly *right* about the length of a car—Ross's car, a 1979 Oldsmobile Ninety-Eight was in fact 18.4 feet long. As Caines estimated the length of a car within inches of its correct length, the court clearly erred in finding his judgment "seriously flawed."

It is always a close and difficult question whether a trial court has abused its discretion. Had Caines been discovered under different circumstances a year or so after trial, we might have concluded differently. The present motion, however, was a special mechanism intended to preserve plaintiff's right not to be unfairly deprived of her normal opportunity to present at trial all the evidence then properly available to her. We conclude, in these rather unique circumstances, that Caines's potential significance as a witness was too great to have allowed denial of the new trial motion. We hold that the court's ruling was an abuse of discretion.

As a new trial has been ordered, we must consider a second issue that defendant Ross raises. Ross would have us order the district court to put aside the stipulation of dismissal between the plaintiff and the Hotel, on the ground that it was entered into without Ross's approval and in bad faith. This issue, however, is not properly before us. In denying the motion for a new trial, the district court specifically did "not reach Ross's motion to strike the stipulation of dismissal between plaintiff and the hotel." We leave this issue to be addressed in the first instance by the district court.

*The judgment of the district court denying plaintiff's motion for a new trial is vacated and the case is remanded for a new trial and for proceedings not inconsistent herewith.*