Cindy **NICKERSON**, Plaintiff, Appellant,

v.

**G.D. SEARLE & COMPANY and Ortho Pharmaceutical Corporation, et al., Defendants, Appellees.**

No. 89–1833.

United States Court of Appeals, First Circuit.

Heard Feb. 5, 1990.

Decided April 3, 1990.

---

Anil Madan, with whom Marijane Dioda-ti, Eileen P. Kavanagh, and Madan and Madan, Boston, Mass., were on brief, for plaintiff, appellant.

Francis H. Fox, with whom Richard L. Burpee and Bingham, Dana & Gould, Boston, Mass., were on brief, for defendant, appellee G.D. Searle & Co.

Robert W. Sparks, with whom David R. Schmahmann, Michelle J. Lipton, Nutter, McClennen & Fish, Boston, Mass., and Bower & Gardner, were on brief, for defendant, appellee Ortho Pharmaceutical Corp.

Before CAMPBELL, Chief Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

BOWNES, Senior Circuit Judge.

This is an appeal by plaintiff-appellant Cindy Nickerson from an unfavorable jury verdict. Plaintiff had brought a product liability suit against G.D. Searle & Company (Searle) and Ortho Pharmaceutical Corporation (Ortho), alleging that two distinct intrauterine devices (IUDs) manufactured by Searle and Ortho and used by plaintiff at different times caused or contributed to cause her to become infertile. After a ten day trial, four special questions on liability were submitted to the jury. The first was on causation: "Did the defendant's IUD

cause or substantially contribute to cause the plaintiff's infertility." The jury answered "no" as to each defendant. Pursuant to the district court's instructions, the jury did not answer the other questions.

Appellant seeks a new trial on a number of grounds: that the verdict was against the weight of the evidence; that there is newly discovered evidence; that the district court made erroneous rulings in excluding and admitting evidence; that the district court's conduct of the trial showed bias and prejudice against the plaintiff and deprived her of a fair trial; and that there were errors in the court's instructions to the jury. We hold that a new trial is not warranted.

## I. THE EVIDENCE

Our review of the evidence is, of course, limited to the issue of causation. On February 1, 1977, the plaintiff, an unmarried high school senior who was just shy of eighteen, had an IUD inserted in her uterus at the Bill Baird Center in Boston. The IUD was manufactured by Searle and was sold under the trademark of Cu–7. Plaintiff testified that she wanted the IUD so she could be sexually active without becoming pregnant and that she intended having only one sex partner. She had some intermittent pain on the left and right side after the insertion and consulted with Dr. Zolman Helfland, who found nothing wrong.

In April 1978, plaintiff was examined by Dr. Max Bulian who found that she had venereal warts, the medical term for which is condylomata. Venereal warts are usually, but not necessarily, sexually transmitted.

In June or July of 1978, plaintiff had the Cu–7 removed at the Family Planning Center of the Visiting Nurses Association in Newport, Rhode Island. She obtained oral contraceptives but stopped using them after about two weeks because she had some bleeding. She then had a Saf–T–Coil IUD inserted; this was removed in two weeks because of discomfort. Plaintiff then had a Lippes Loop IUD inserted. This IUD was manufactured by the other defendant, Ortho.

Plaintiff used the Lippes Loop until September of 1980, when it fell out. In September of 1980, she was examined by Dr. Alan Altman who detected a right ovarian cyst and prescribed medication for it. Plaintiff did not use an IUD after the Lippes Loop fell out in September of 1980.

On April 10, 1983, plaintiff was married to Edward Nickerson. She has used no contraceptives since her marriage. In 1984 plaintiff complained to Dr. Michael Dean of vaginal itching. She had consulted with Dr. Dean previously because she was not getting pregnant. In June of 1985, plaintiff consulted Dr. Merle J. Berger, an infertility specialist. Dr. Berger performed a laparoscopy which showed that one fallopian tube was completely blocked, and the other was partially blocked. In December of 1985, Dr. Berger removed plaintiff's right ovary and right fallopian tube. He also attempted to repair the left ovary and left fallopian tube in the hope of saving plaintiff's fertility. This was not accomplished.

There is no question that plaintiff is permanently infertile. It is also beyond dispute that the direct cause of the infertility was Pelvic Inflammatory Disease (PID). The causation issue was whether either or both IUDs manufactured by defendants caused or contributed to cause the PID that resulted in plaintiff's infertility. The evidence on the causation issue came mainly from the testimony of two expert witnesses, Dr. Merle J. Berger, who testified on behalf of plaintiff, and Dr. David A. Grimes, who was called by defendant Searle.

It was Dr. Berger's opinion, based on plaintiff's medical history and his own considerable experience and knowledge, that both the Cu–7 IUD and the Lippes–Loop IUD caused or contributed to cause the PID that resulted in plaintiff's infertility. There is no point in detailing the basis for Dr. Berger's opinion; suffice to say it was adequate to withstand defendants' motions for a directed verdict.

On cross-examination, Dr. Berger acknowledged that PID could originate from

sources other than the use of IUDs. There was evidence that PID could result from an infection precipitated by abdominal surgery. Plaintiff's medical history showed that she had a cyst and her appendix removed in an operation performed in 1975. Dr. Berger testified that he did not know when plaintiff's PID started. As already noted, the plaintiff's medical history showed that in 1978 she had condylomata (venereal warts). Dr. Berger agreed that the relative risk of PID was greater with those who had a previous infection, such as condylomata, than those who did not. He admitted that some medical studies showed that there was a relationship between tubal infertility and prior genital or pelvic infections. Dr. Berger was questioned about a medical study indicating there is no significant risk of PID from the use of an IUD by those who have only one sex partner. Dr. Berger agreed that it was difficult to estimate accurately the relative risk of PID by users of IUDs and that women who do not use IUDs get PID.

Dr. Grimes, the expert witness for defendant, mounted a general attack on the methodology and validity of the studies connecting the use of IUDs to PID on which Dr. Berger had relied. It was Dr. Grimes' opinion that if PID develops in an IUD user, it is caused by the contamination of the uterine cavity with bacteria at the time of the insertion of the IUD. He opined that it was not the IUD but the insertion process that "appears to be the culprit." Dr. Grimes testified, on the basis of certain medical studies, that IUD users who had only one sex partner were not exposed to a significant risk of tubal infertility. It was his opinion that reliable studies showed that women with a past history of minor genital infections, such as venereal warts, run an increased risk of tubal infertility. According to Dr. Grimes, genital warts indicate the presence of other sexually transmitted diseases, most notably chlamydia, that can cause PID. It was Dr. Grimes' opinion that sexually transmitted diseases cause PID, resulting in tubal infertility. Dr. Grimes stated that in his

opinion plaintiff's PID was caused by a sexually transmitted disease, not the use of IUDs, and that the most likely source of plaintiff's infection was a bacterium called chlamydia trachomatous. We think this is a fair distillation of the essence of the causation evidence.[1]

## II. SUFFICIENCY OF THE EVIDENCE

■ Having surveyed the evidence, we next consider whether it was sufficient for the jury finding of no causation. "Denial of a motion for a new trial will be reversed only for abuse of discretion." *Conway v. Electro Switch Corp.*, 825 F.2d 593, 598 (1st Cir.1987). *See also Cazzola v. Codman & Shurtleff, Inc.*, 751 F.2d 53, 54 (1st Cir.1984); *Robinson v. Watts Detective Agency, Inc.*, 685 F.2d 729, 740 (1st Cir. 1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 728, 74 L.Ed.2d 953 (1983). And, as we have noted, the discretion of a trial judge is limited to those situations where the verdict is against the clear weight of the evidence to the degree that upholding the verdict will result in a miscarriage of justice. *Conway*, 825 F.2d at 598–99. Such is not the situation before us. The question of causation was properly left to the jury and there was ample evidence for it to find, as it did, that the use of defendants' IUDs did not cause or contribute to cause plaintiff's infertility. We uphold the denial by the district court of plaintiff's motion for a new trial on the ground that the verdict was against the weight of the evidence.

## III. NEWLY DISCOVERED EVIDENCE

■ *Duffy v. Clippinger*, 857 F.2d 877 (1st Cir.1988), delineated the rule in this circuit on what is required to obtain a new trial on the basis of newly discovered evidence. After pointing out that a district court's ruling should not be overturned unless there is an abuse of discretion, we stated:

---

1. There was a great deal of other testimony by Berger and Grimes and other witnesses on the

adequacy of warnings given IUD users which is not relevant to causation.

■ In order to grant a motion for a new trial on the basis of newly discovered evidence, the following elements must be present:

1) The evidence has been discovered since the trial;

2) The evidence could not by due diligence have been discovered earlier by the movant.

3) The evidence is not merely cumulative or impeaching; and

4) The evidence is of such nature that it would probably change the result if a new trial is granted.

*Id.* at 879.

The evidence which appellant claims entitles her to a new trial and the circumstances in which it arose are as follows. On the day after the jury verdict plaintiff's counsel learned through an attorney, Michael Ciresi, whom he knew because of their mutual interest in IUD cases, about testimony that had been given in an IUD case in California against Searle. The case was settled during trial. Plaintiff's counsel obtained a copy of the transcript of the testimony, which was submitted to the district court along with plaintiff's motion for a new trial. Appellant states in her brief at page 44 that Attorney Ciresi told plaintiff's counsel:

Dr. Francis B. O'Brien, former Associate Director of OB/GYN Clinical Research at Searle had testified and that, in the course of his testimony, it was determined that Searle had submitted false data to the FDA regarding the rate of infection associated with its IUDs and further that Searle had determined there were problems with fraying of tailstrings on its IUDs throughout the entire production process but had not revealed that information to the FDA or to prescribing doctors.

We have read the 230 page transcript submitted. There was no judicial determination made that Searle's submissions to the FDA were false and that there were problems with fraying of tailstrings. At the most, there was testimony by Dr. O'Brien on cross-examination by Ciresi from which this could be argued. This was clearly not the situation of a former employee of Searle confessing contritely that false information had been deliberately submitted to the FDA. Even, however, if such an admission could be squeezed from the transcript testimony of Dr. O'Brien, in the light of the jury finding of no causation its relevancy would be questionable. At the most, it could be used only for impeachment purposes. We, therefore, need not reach the troublesome question of whether the evidence could have been discovered earlier by due diligence. We find that the district court properly denied plaintiff's motion for a new trial based on newly discovered evidence.

## IV. THE RULINGS OF THE DISTRICT COURT

■ Appellant complains about most adverse trial rulings. Her initial complaint is that the court erred in refusing to tell the jury of a "stipulation" made by the defendants. On the fourth day of trial there was a lengthy hearing outside the presence of the jury on the admissibility of a number of plaintiff's proffered exhibits. During the course of the hearing, the court stated: "There's no dispute that they [defendants] knew of the risk of PID and infertility." Counsel for both defendants agreed that this was so. The court further stated: "They admit they knew and should have known that PID causes infertility, right, or may cause infertility." Defense counsel did not dispute this and the court asked both of them individually if they admitted that PID may cause infertility and they both stated that they agreed that this was so. Counsel's comments were never reduced to writing and appellant's attorney never sought to introduce them in evidence during trial.

We have several comments. First and foremost, it is clear from the trial transcript that the documents being offered by plaintiff went to the issue of adequacy of warning in the light of what the defendants knew or should have known. Neither the oral concession made by defense counsel nor the proffered exhibits bore on causation.

Even assuming, however, that the asserted stipulation had some tangential bearing on causation, there was another reason for excluding it: plaintiff's failure during trial to offer it as evidence. At no time during the trial did plaintiff's counsel ask that the claimed stipulation be read to the jury or that the pertinent portions of the transcript be marked in evidence. There was a pre-charge conference prior to argument and plaintiff's counsel did not request at that time that the asserted stipulation be read to the jury as part of the charge. We are aware that plaintiff's requested instruction number 51 was that the stipulation be read to the jury. It seems to us, however, that if plaintiff's counsel felt as strongly then as he does now about the stipulation, it would have been specifically mentioned during the pre-charge conference. The first time the claimed stipulation was orally brought to the attention of the court was after the charge was completed. It was too late then to read a stipulation to the jury that had not been put in evidence. To do so could have unfairly stressed or distorted its meaning. Moreover, the facts stipulated to by defense counsel were not in any way disputed by them at trial.

We have read the two cases cited by appellant and find them both inapposite. In *Meschino v. North American Drager, Inc.*, 841 F.2d 429 (1st Cir.1988), we reversed a directed verdict for a defendant because the district court had ignored an admission of sale in defendant's answer to the complaint. We held that since the answer was part of the pleadings and record of the case, the court had to take judicial notice of it. *Id.* at 435. This is quite different from an oral agreement made mid-trial by counsel out of the jury's presence relating to facts which were not disputed during trial. Even further off target is *St. Louis Baptist Temple v. FDIC*, 605 F.2d 1169 (1979), which involved the review of a grant of summary judgment for defendants. In the course of its opinion the court stated, "a district court may utilize the doctrines underlying judicial notice in hearing a motion for summary judgment substantially as they would be utilized at trial.... Thus, a court may: consider stip-

ulations, concessions of counsel, transcripts, exhibits and other papers,...." *Id.* at 1171–72. We agree with the court's observation but find its relevancy to this case so remote as to vanish from sight.

We hold that, under the circumstances, the court did not err in refusing to read the stipulation to the jury.

■ Appellant next complains of the limitation placed on the cross-examination of Searle's expert, Dr. Grimes. After defense counsel had elicited Grimes' qualifications, plaintiff's counsel requested, and was granted, a voir dire of Grimes. At the bench conference prior to the start of the voir dire, the court ruled that counsel could not ask Grimes about his work in abortion clinics and his experience in the field of abortion. In response to counsel's question, "Can't I show that he's qualified in abortion rather than in IUD?", the court stated:

> You may ask him about his qualifications in IUD. You may not ask him about his qualifications in abortion. You may ask him anything you want about the articles he wrote on this subject. You may point out to the jury that he's only written one article on this subject, and the other articles were on other subjects, but not by name.

After further remonstrance by counsel, the court stated: "You may have full examination about what he did with regard to what is at issue here, but we will not poison the jury with any further references to abortion." Clearly the court excluded abortion questions because it felt they would be unduly prejudicial. In making its ruling the court obviously had in mind the fierce emotional reaction that is engendered in many people when the subject of abortion surfaces in any manner. During the discussion of the jury voir dire by the court the question of reference to abortion had been raised. Counsel for the plaintiff stated: "I think I will not get into abortion." After further discussion, counsel for the plaintiff reiterated: "I don't think we're even going to get into that subject." Nothing was said about the cross-examination of Dr. Grimes.

■ Fed.R.Evid. 403 states in pertinent part: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." A district court has wide discretion in admitting or excluding evidence on the grounds of unfair prejudice. *Onujiogu v. United States,* 817 F.2d 3, 6 (1st Cir.1987); *United States v. Moreno Morales,* 815 F.2d 725, 740 (1st Cir.1987); *United States v. Kadouh,* 768 F.2d 20, 21 (1st Cir.1985); *United States v. Tierney,* 760 F.2d 382, 388 (1st Cir.1985); *United States v. Kepreos,* 759 F.2d 961, 964 (1st Cir.1985).

We find that the district court did not abuse its discretion in excluding voir dire questions of Dr. Grimes aimed at his work in abortion clinics and his experience in the abortion field.

■ Appellant alleges a two-fold error in rulings by the court relative to the examination of plaintiff's expert, Dr. Berger. The first is that plaintiff's counsel was precluded from introducing other parts of Dr. Berger's deposition testimony after defense counsel had used parts of it in cross-examination. This, appellant urges, contravened Fed.R.Civ.P. 32(a)(4) which provides in pertinent part: "If only part of a deposition is offered in evidence by a party, an adverse party may require the offeror to introduce any other part which ought in fairness to be considered with the part introduced, and any party may introduce any other parts." Our review of the record shows that on three occasions the court refused to allow another part of Dr. Berger's deposition to be read during cross-examination. On one occasion defense counsel was required to read two additional deposition questions and answers. On each occasion that the court excluded reading another part of the deposition it examined the deposition carefully. The court's rulings were neither a blanket exclusion of all parts of the deposition plaintiff's counsel wanted read nor hipshot rulings made without consideration. The district court did not abuse its discretion in the manner in which it handled this aspect of the cross-examination of Dr. Berger.

■ The second part of this claim of error by appellant is tied into the first. On at least two occasions when the court refused to expand the reading of the deposition, it told counsel that he could refer to the deposition on redirect examination of Dr. Berger. Appellant contends that the court improperly limited the redirect of Berger and that this unfairly precluded reading parts of his deposition as the court had promised. The fact is that the court refused to allow any further redirect examination of Dr. Berger after the recross had finished. The court had informed counsel at the start of the trial that witnesses would be subject to "direct, cross, redirect, recross, period." This rule of the trial was well within the discretion given a trial judge under Fed.R.Evid. 611(a):

> Control by court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

We have long since passed the time when witnesses can be examined for as long as counsel wants so that every conceivable point is covered. When counsel is told at the start of a trial that there will be only one opportunity for recross, he or she must marshall the evidence to fit the rule. The district court neither abused its discretion nor acted unfairly in not permitting a second recross examination of Dr. Berger.

■ There is no merit to the claim that the court allowed Searle's expert, Dr. Grimes, to speculate as to the cause of plaintiff's PID.

The admission of expert testimony is a matter reserved to the trial court's discretion. *Lynch v. Merrell–National Laboratories,* 830 F.2d 1190, 1196–97 (1st Cir.1987); 3 J. Weinstein & M. Berger, *Weinstein's Evidence* § 703[1], at 703–4 (1987). In the absence of an abuse of that discretion or a "clear error" of law, the trial judge's decision will not be reversed. *DaSilva v. American*

*Brands, Inc.*, 845 F.2d 356, 361 (1st Cir. 1988).

*International Adhesive Coating Company, Inc. v. Bolton Emerson International, Inc.*, 851 F.2d 540, 544 (1st Cir.1988). The district court did not abuse its discretion or commit an error of law in allowing Dr. Grimes to testify as to the cause of plaintiff's PID.

■ We quote from appellant's brief her next claim of error: "The Court's Erroneous Ruling Allowing The Introduction Of Evidence Relative To The Number of Mrs. Nickerson's Sex Partners Was So Prejudicial and Substantially Unjust That The Plaintiff Was Denied a Fair Trial." In fact there was no ruling allowing the introduction of evidence relative to *the number* of plaintiff's sex partners. The court explicitly ruled on the fourth day of trial "you may not argue to the jury that she did indeed have a series of partners and that is what caused her to have PID and to become infertile." The evidence on plaintiff's sexual activity while using the defendants' IUDs came from the plaintiff herself. She testified in court that she obtained the IUD when she was seventeen (almost eighteen) so she could be sexually active without becoming pregnant. Pursuant to Fed.R. Civ.P. 32(a)(1) a portion of plaintiff's deposition was read; she testified that she became sexually active at age eighteen in high school and that she did not remember the number of men with whom she had sex. From this testimony, the jury could find that, prior to her marriage, plaintiff had more than one sex partner.

There was evidence introduced through both Dr. Berger and Dr. Grimes of studies showing that women who reported having only one sex partner had no increased risk of tubal infertility associated with the use of IUDs. There was evidence that PID is an infectious disease that can be transmitted sexually. Plaintiff's sexual activity while using the IUDs thus bore directly on the issue of causation. Appellant invokes the venerable tort rule that a defendant takes the plaintiff as it finds her. But that rule does not apply where the defense is that the injury for which plaintiff has brought suit was not caused by the defendant. We agree with appellant that one of the main markets for IUDs is sexually active women and that defendants should not be shielded from liability if infertility was caused by an IUD. Plaintiff, however, had the burden of proving that the IUDs caused or contributed to cause her PID. Defendants had the right to show that the PID could have been caused by something other than the IUDs.

There is little doubt that the evidence showing that PID was less frequent in monogamous IUD users than in those with more than one sex partner was prejudicial to plaintiff. But in light of plaintiff's testimony, it was directly relevant on the question of causation. The question is whether "its probative value is substantially outweighed by the danger of *unfair* prejudice...." Fed.R.Evid. 403. Appellant relies on *Craig v. A.H. Robins Co., Inc.*, 790 F.2d 1 (1st Cir.1986), for her claim that it was error to allow the jury to consider evidence of studies comparing the incidence of PID between monogamous users of IUDs and those that had more than one sex partner. In *Craig*, we upheld the district court's refusal to permit testimony concerning the effect of having multiple sex partners. The evidence in that case was that multiple sex partners enhanced the risk of PID only when such activity occurred during the same general period of time and there was no evidence that plaintiff during any one period of time had multiple sex partners. The district court persisted in excluding the evidence after defendants offered to prove that the risk of PID increases with every sexual contact regardless of the time period involved. *Id.* at 2–3. We observed that "the jury could infer from the evidence of plaintiff's medical history and use of contraceptives that she had sex partners prior to her husband...." The same inference could be made in this case. In upholding the exclusion, we explicitly stated: "We cannot say that the court abused its discretion." *Id.* at 3. No general rule was laid down. The admission or exclusion of this type of evidence is best left to the discretion of the trial judge. We find that the district court

did not abuse its discretion in admitting the evidence to which appellant objects.

■ Although it is a close question, we do not think the court erred in excluding portions of the depositions of Dr. Pasquale and Dr. Stewart. Dr. Pasquale had been assistant director of clinical research at Ortho since 1967. At the time his deposition was taken, December 11, 1986, he worked part time for Ortho with the title of Chief of Reproductive Medicine. Dr. Stewart started working for Searle in 1961; at the time of his deposition, April 29, 1985, he was Director of Clinical Research in Obstetrics and Gynecology. The excerpts excluded from both doctors' depositions concerned IUD labels and warnings issued by Searle and Ortho after plaintiff had used defendants' IUDs. The district court ruled that Fed.R.Evid. 407 precluded the introduction in evidence of testimony about the contents of the labels and warnings. Fed.R.Evid. 407 provides in pertinent part: "When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event." Even if the court erred in its ruling, the error was harmless because the excluded excerpts from both depositions went only to the question of knowledge and efficacy of the warnings; they did not relate at all to the issue of causation. *See Brookover v. Mary Hitchcock Memorial Hospital,* 893 F.2d 411, 421 (1st Cir.1990); *United States v. Ladd,* 877 F.2d 1083, 1086 (1st Cir.1989); *deMars v. Equitable Life Assurance Soc. of U.S.,* 610 F.2d 55, 61–62 (1st Cir.1979).

■ Appellant's next assignment of error is that the court improperly limited the cross-examination of Dr. Robert Reece and Leslie Graf. Dr. Reece had worked at the Bill Baird Center at the time plaintiff obtained the Cu–7 IUD. On direct examination, Dr. Reece testified that he inserted Cu–7 IUDs, and that there was a risk of infection at the time of the insertion of an IUD because the introduction of a foreign object into an internal body cavity always causes a risk of infection. The cross-exam-

ination was wide ranging; most of Searle's objections to questions were overruled. Objections were sustained, however, to questions about written materials furnished by Searle containing warnings about the use of IUDs. The basis for the objections was that these questions went beyond the scope of direct examination, which they did. We think the court's ruling was well within its discretion. We also note that the questions excluded had no bearing on causation.

■ Leslie Graf worked at the Bill Baird Center as a counselor when the plaintiff obtained the Cu–7 IUD. She explained the counselling procedure for patients who had requested the insertion of an IUD. Although Graf's signature was on plaintiff's admission form, she did not specifically remember plaintiff. Graf testified as to the specific counselling plaintiff would have received before the IUD was inserted. On cross, Graf testified that she did not remember specifically what she told patients in February of 1977 and that she did not remember talking to plaintiff at all. Some objections to cross-examination questions were sustained, but in our reading of the record we did not find that plaintiff's counsel made or preserved objections to any of the adverse rulings. *See* Fed.R. Evid. 103(a). In any event, we see no errors of law or abuse of discretion in the rulings that were made.

■ Appellant assigns as a ground for a new trial the admission into evidence of the Bill Baird Center information sheet, explaining the use and risks of using IUDs. We need not decide whether this exhibit should have been excluded as hearsay, as appellant asserts, because it has nothing to do with causation; if its admission was error, the error was harmless.

■ The next assignment of error is the court's refusal to modify the final pretrial order so as to allow plaintiff to depose two doctors not named by plaintiff on her witness list. Appellant's claim is devoid of merit. Judge Tauro, who handled the pretrial aspect of the case, explicitly found in denying the motion made at the initial com-

mencement of trial in October of 1988, that plaintiff had "an opportunity to depose these witnesses." This ruling was made after a hearing on plaintiff's motion. After Judge Zobel took over the case, plaintiff made two other attempts to add the two doctors to her witness list; both attempts were rebuffed.

■ The handling and enforcement of pretrial orders is an area in which appellate courts are, quite properly, loath to tread. Unless there is manifest injustice or the district court has abused its discretion to the point of being arbitrary, the court of appeals will not interfere with a district court's administration of pretrial orders. *See Ramirez Pomales v. Becton Dickinson & Co., SA*, 839 F.2d 1, 3 (1st Cir.1988). The district court's refusal to deviate from the final pretrial order was neither a manifest injustice nor an abuse of discretion.

■ Appellant's next assignment of error, although not legally tenable, is unique. She claims that the district court erred in not ruling, as requested by plaintiff, that defendants' IUDs were "unavoidably unsafe." Some background information is necessary. In their trial briefs, both defendants argued that their IUDs were "unavoidably unsafe products" within the meaning of comment K to the Restatement (Second) of Torts § 402A. Section 402A is entitled "Special Liability of Seller of Product For Physical Harm to User or Consumer." Comment K notes that unavoidably unsafe products "are especially common in the field of drugs." The last sentence of the comment states:

> The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.

After the jury was selected, but prior to the start of the trial, plaintiff's counsel asked if he could tell the jury "that the defendants in their briefs have said that their products are unavoidably unsafe." The court answered, "No." Defendants did not try to invoke comment K during trial. In addition to denying causation, they defended on the ground that their products were reasonably safe. No instruction was given to the jury implicating comment K.

We do not think the district court erred in its ruling. Defendants' attempt to bring their products within the ambit of comment K may have been misguided, but it was not an admission that the IUDs were "unavoidably unsafe." The pretrial briefs were arguments, not admissions.

Appellant asserts that the court's rulings excluding a number of her proffered exhibits were erroneous and are grounds for a new trial. We have considered carefully all of the court's exclusionary rulings and hold that neither singly nor in the aggregate do they constitute grounds for a new trial.

## V. THE CONDUCT OF THE TRIAL

Based on our exhaustive review of the record, we reject as totally unfounded appellant's claim that she was denied a fair trial. We realize the amount of time and effort plaintiff's counsel put into this case but that does not excuse his crying foul because the result was not to his liking.

## VI. THE JURY CHARGE

■ Appellant claims that the court gave six erroneous instructions to the jury. Only two, however, bear on the issue of causation. The first error asserted is that the court referred to "direct cause" in instructing the jury on the issue of causation and thus the jury was given the impression that the IUDs had to be the sole cause of plaintiffs PID. It is true that in discussing plaintiff's claims the court stated, "the plaintiff says ... [that the IUDs] caused her to contract pelvic inflammatory disease...." In discussing plaintiff's burden of proof, however, the court stated that plaintiff "has to persuade you with respect to each defendant: (1) that its IUD caused or contributed to cause her infertility;

...." This was followed shortly by this instruction: "The plaintiff does not have to show that the IUD was the sole cause of her PID and infertility, but she has to show that it was a substantial, contributing cause, something more than negligible." There was no error in the instructions on causation.

Appellant attacks the special jury interrogatory on causation as inadequately defining it. The interrogatory asked: "Did the defendant's IUD cause or substantially contribute to cause the plaintiff's infertility." We find nothing wrong in the wording of this interrogatory.

Any other issues raised by appellant do not merit discussion and are rejected without more.

*Affirmed.*