#26682-a-GAS
**2014 S.D. 42**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

MEGAN RUSCHENBERG, JESSICA
CORNELIUS and HEATHER RENSCH,                    Plaintiffs and Appellants,

v.

DAVID ELIASON, in his individual
capacity and as an owner and
employee of ANNABELLE'S ADULT
SUPER CENTER OF SOUTH DAKOTA,
LLC, and OLIVIA'S OF SOUTH DAKOTA,
LLC d/b/a OLIVIA'S ADULT SUPER STORE,

and

ANNABELLE'S ADULT SUPER CENTER
OF SOUTH DAKOTA, LLC and OLIVIA'S OF
SOUTH DAKOTA, LLC d/b/a OLIVIA'S
ADULT SUPER STORE,                               Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA
\* \* \* \*

THE HONORABLE STUART L. TIEDE
Judge
\* \* \* \*

AARON D. EIESLAND
Johnson Eiesland Law Firm, PC
Rapid City, South Dakota

and

MANUEL J. DE CASTRO, JR.
Sioux Falls, South Dakota                        Attorneys for plaintiffs
                                                 and appellants.


MICHAEL L. LUCE
LISA M. PROSTROLLO
Murphy, Goldammer, & Prendergast, LLP
Sioux Falls, South Dakota                        Attorneys for defendants
                                                 and appellees.

                                                 ARGUED MARCH 25, 2014
                                                 OPINION FILED **07/02/14**

#26682

SEVERSON, Justice

[¶1.]        Megan Ruschenberg, Jessica Cornelius, and Heather Rensch, collectively referred to as Appellants, appeal the circuit court's denial of Appellants' motion in limine to exclude evidence of Ruschenberg's abortion, Appellants' motion for mistrial based upon certain statements made by a witness at trial, and Appellants' proposed jury instructions regarding the "proxy rule" or "alter ego rule."[1]  We affirm.

## Background

[¶2.]        In 2005, David Eliason and Keith Johnson formed Annabelle's Adult Super Center of South Dakota, LLC (Annabelle's) in Sioux Falls, South Dakota.  In 2007, Eliason, his wife, Renee, and Johnson formed Olivia's of South Dakota, LLC (Olivia's) in Tea, South Dakota.  Both Annabelle's and Olivia's sell adult movies, clothing, and various other sexual products.  Johnson was the majority owner of Annabelle's and Olivia's.  Eliason was a minority owner and helped to manage both businesses.

[¶3.]        In the spring of 2007, Megan Ruschenberg was hired as an employee to work at both Annabelle's and Olivia's.  Ruschenberg testified that in June 2007, Eliason forcibly raped her in a back room at Olivia's.  Ruschenberg did not report the rape to law enforcement or to anyone at Annabelle's or Olivia's.  She also did not tell her roommate or seek medical care following the alleged rape.  Ruschenberg later testified that she did not report the rape to law enforcement because she

---

1.       For purposes of uniformity with our case law, we will use "alter ego rule" instead of "proxy rule" when addressing this issue.  *See Benson v. Goble*, 1999 S.D. 38, 593 N.W.2d 402.

believed that Eliason could manipulate the integrity of the Sioux Falls Police Department with his power and money. Ruschenberg returned to work the next day and continued working.

[¶4.] Approximately one month later, Ruschenberg alleged that Eliason, once again, forced her into the back room of Olivia's and raped her. Like the previous incident, Ruschenberg did not report the rape to law enforcement or to anyone at Annabelle's or Olivia's. She did not seek medical care. Ruschenberg went back to work the day after the second rape.

[¶5.] Ruschenberg testified that she became pregnant as a result of the rape. She alleged that she approached Eliason about her pregnancy and that Eliason told her she had "options," including allowing Eliason and his wife to adopt the baby. Ultimately, Ruschenberg decided to have an abortion, and she testified that she accepted $450 from Eliason so that she could drive to Sioux City, Iowa, and have the procedure. Conversely, Eliason testified that the $450 payment was an advance on Ruschenberg's pay. Ruschenberg could not remember the date she had the abortion or the location of the clinic in Sioux City, where she had the procedure. She presented no medical records at trial of the abortion, but she did testify that she completed medical forms prior to the having the procedure. One of these forms asked whether the pregnancy was a result of a rape. Ruschenberg testified that she indicated that her pregnancy was not the result of a rape.

[¶6.] In October 2007, Ruschenberg agreed to travel with Eliason to North Carolina on a business trip. She testified that she stayed in the same hotel room with Eliason for 11 days. It was here that she alleged that Eliason raped her a

third time. Ruschenberg did not report the third rape to law enforcement or to anyone at Annabelle's or Olivia's because she believed that Eliason "had friends everywhere in the country[.]"

[¶7.] In September 2007, Jessica Cornelius was hired as an employee at Annabelle's. Cornelius alleged that during her employment, Eliason made several comments of a sexual nature to her and that Eliason slapped her on her buttocks while she was working. She also alleged that Eliason forcibly raped her in his office at Annabelle's. Cornelius never informed law enforcement, her roommate, or anyone at Annabelle's of the rape or Eliason's conduct. She alleged that she did not tell anyone of the rape because Eliason knew "powerful people[.]" Cornelius also never told Johnson about Eliason's conduct even though she knew that Johnson was the majority owner of Annabelle's and Olivia's and she had spoken with Johnson on the phone before and after the alleged rape. Cornelius continued working at Annabelle's.

[¶8.] Also in the fall of 2007, Heather Rensch was hired to work at Annabelle's. According to Rensch, Eliason made inappropriate jokes and comments of a sexual nature while Rensch was employed at the business. Rensch alleged that on one occasion, Eliason shocked her on her arm with a sexual toy and that the shock left welts on her forearm. Rensch never reported any of these incidents to anyone at Annabelle's.

[¶9.] Similar to Ruschenberg, Rensch agreed to accompany Eliason on a business trip to North Carolina. Rensch had the opportunity to speak with Johnson

while in North Carolina, but she never mentioned anything to Johnson about Eliason's conduct.

[¶10.]     On the same day in November 2007, Rensch, along with Ruschenberg and Cornelius, quit working at Annabelle's and Olivia's. Appellants also each applied for a protection order against Eliason. Even though all three women applied for a protection order, only Ruschenberg and Cornelius pursued the order.

[¶11.]     Ruschenberg, Cornelius, and Rensch filed separate civil complaints alleging that Eliason had committed several acts of sexual misconduct against them while he acted as manager of Annabelle's and Olivia's. Appellants alleged several intentional tort claims against Eliason. Appellants also asserted negligent infliction of emotional distress and negligent training and supervision causes of action against Annabelle's and Olivia's. The separate complaints were eventually consolidated by court order.

[¶12.]     On December 22, 2010, Annabelle's and Olivia's filed a motion for summary judgment arguing that the businesses were not liable for Eliason's alleged misconduct. Judge Patricia C. Riepel presided over the motion hearing.[2] Judge Riepel dismissed the causes of action for "invasion of privacy, intentional infliction of emotional distress, false imprisonment, battery, assault, stalking, [ ] kidnapping, and rape" as asserted against Annabelle's and Olivia's. The court also noted that counsel for the Plaintiffs acknowledged that the intentional tort causes of action were directed solely against Eliason and were not being asserted against Annabelle's and Olivia's. The circuit court stated that the intentional tort claims

---

2.     The record does not contain a transcript of this hearing.

remained against Eliason in his individual capacity. Lastly, Judge Riepel denied Annabelle's and Olivia's motion for summary judgment as to Plaintiffs' causes of action for negligent infliction of emotional distress and negligent training and supervision.

[¶13.]      Judge Stuart L. Tiede presided over the jury trial, which was held from March 12 to March 15, 2013. Prior to the start of trial, Appellants moved to exclude evidence of Ruschenberg's abortion on the grounds that such evidence was overly prejudicial. The circuit court denied the motion stating:

> Well, I don't know how the case is going to unfold and what the evidence ultimately is going to be about the relationship between the plaintiffs and Mr. Eliason, what was said or done subsequent to the alleged acts. It does seem to me that if there was interaction between one or more of the plaintiffs and the defendant, post these intentional torts as alleged by the plaintiffs, that that would all be relevant in assessing whether or not the tort was committed, whether it has caused any damages, and the nature and extent of those damages.
>
> Furthermore, as [counsel for Annabelle's and Olivia's] indicated, there may be issues of credibility. Now, I don't know about - - I don't know Mr. Eliason's response, whether he admits or denies whether there was such a conversation, whether he paid the money, whether the abortion, in fact, was obtained or not, I just don't know. But it is - - was included in the complaint.
>
> I think the sensitive nature of it can be handled through voir dire, if necessary, and I trust that you will be able to address that issue with the prospective jury panel in order for us to obtain a fair and impartial jury.

[¶14.]      During trial, Appellants moved for a mistrial when Johnson gave certain testimony regarding Eliason's criminal history. The following exchange took place between Johnson and Appellants' counsel:

> **Q.** And the first time you're telling this jury you knew there was a problem with [Eliason] was when the money wasn't right?

**A.** I did not say that, sir.

**Q.** Was it when you heard about the protection order?

**A.** I heard about that he was going to court for the rape charge that he was not found guilty on.

[¶15.] The circuit court denied Appellants' motion for mistrial concluding that Johnson was confused as to the nature of the prior protection order against Eliason and that Johnson did not "deliberately inject[ ] the issue of the criminal acquittal[.]" The circuit court also admonished the jury by directing the jury to "disregard that testimony and it is ordered stricken." The circuit court continued:

> You are further instructed that no criminal charges were filed against Mr. Eliason as a result of the allegations of these plaintiffs and there was no trial in this matter.
>
> You are further instructed that whether or not charges had been preferred or were preferred, or whether or not there has been a trial, is irrelevant to any issue in this case. You are to determine whether or not the allegations of the plaintiffs against these defendants are true or not true based upon the evidence received here in open court and you are to disregard any consideration of whether or not there were criminal charges filed, a trial or a conviction or acquittal.

Further, in speaking with counsel outside of the presence of the jury, the circuit court remarked:

> And I have now admonished the jury that that testimony was not correct; that there were no criminal charges, that Mr. Eliason was not acquitted of any criminal charge of rape and I've admonished the jury to disregard the evidence. And I believe that the jury will comply with the admonishment and the directions of the Court.

[¶16.] Despite Judge Riepel's summary judgment order that dismissed the intentional tort claims against Annabelle's and Olivia's, Appellants requested that the jury be instructed that Annabelle's and Olivia's were liable for Eliason's intentional torts under the "alter ego rule." At trial, Appellants also moved to

-6-

amend their complaint pursuant to SDCL 15-6-15(b) to include the intentional tort causes of action against the businesses.  The circuit court denied Appellants' motion to amend, foreclosing Appellants' arguments regarding the proposed instructions.  The circuit court remarked:

> Well, obviously I was not present for the prior motions hearings, did not have an opportunity to review the affidavits, listen to the arguments, review the briefs, but as nearly as I can determine from the order of Judge Riepel[,] she determined that there were no genuine issues of material fact, and that the defendants Annabelle's and Olivia's were entitled to judgment as a matter of law on the question of whether or not they had any liability for any alleged intentional acts of Mr. Eliason.
>
> I don't know - - I don't recall her reciting the statute in her letter opinion - - I could be wrong - - whether or not she referred to SDCL 47-34A-302, which I think makes very clear that a limited liability company is liable for loss or injury caused to a person or for a penalty incurred as a result of a wrongful act or omission, or other actionable conduct of a member or manager acting in the ordinary course of business of the company or with authority of the company.
>
> The only reason that we have been dealing with whether or not the acts of Mr. Eliason were in the ordinary course of business or with authority of the company is because of the remaining count, negligent infliction of emotional distress.  I think it would be prejudicial and unfair to the defendants to, at this late stage, now shift the entire theory of the case again back to whether or not the acts of Mr. Eliason were in the ordinary course of business or with the authority of the company.  I realize there has been some evidence in that regard.  But in my mind it's difficult to envision how - - if the acts as alleged against Mr. Eliason are true - - that they would fall within the language of the statute here.  And, therefore, I can see why Judge Riepel ruled the way she did based upon the record as it existed at that time.
>
> I'm not going to disturb it.  As I previously commented, in her order she commented that the plaintiffs were not contesting that issue.  She made that express reference in her decision.  And, as [counsel for Annabelle's and Olivia's] has pointed out, it was

reaffirmed again at the pretrial, so I'm going to adhere to my prior rulings. The motion is denied.

[¶17.] The jury returned a verdict for Eliason and the businesses (Appellees/Defendants) on all claims. We review the following issues in this appeal:

I.     Whether the circuit court erred in denying Appellants' motion in limine to exclude evidence of Ruschenberg's abortion.

II.    Whether the circuit court erred in denying Appellants' motion for mistrial based upon Johnson's statement at trial.

III.   Whether the circuit court erred in rejecting Appellants' proposed jury instructions regarding the "alter ego rule."

## Analysis

[¶18.] Prior to reaching the merits, we must first address a procedural matter. Eliason did not file a brief in this appeal. Appellants contend that this Court should consider Eliason's failure to respond to the appeal as "tantamount to an admission of appellee that appellant's appeal is meritorious and summarily reverse the appealed judgment."

[¶19.] Appellants cite *Birchfield v. Birchfield* in support of their argument. 417 N.W.2d 891 (S.D. 1988). In *Birchfield*, the Court said, "We could easily hold that failure to file a brief is tantamount to an admission by an appellee that appellant's appeal is meritorious and summarily reverse the appealed judgment." *Id.* at 893. The Court in *Birchfield* ultimately determined that the "ends of justice" did not allow the Court in that case to summarily reverse the appealed judgment because the appellee did not file a brief. *Id.* Two years after the Court's decision in *Birchfield*, the Court faced with the same issue stated, "We will not automatically treat an appellee's failure to file a brief as a confession of error, but may do so at our

discretion." *Matter of Guardianship of Gallop*, 453 N.W.2d 616, 617 (S.D. 1990). The Court further elaborated on this point in *Hawkins v. Peterson* and stated that "[w]hile failure of an appellant to file a brief may be fatal, . . . failure of the appellee to file a brief does not automatically translate to victory for the appellant. Appellant still has the burden of showing that the findings of fact are clearly erroneous or that the conclusions of law are incorrect." 474 N.W.2d 90, 92 (S.D. 1991). *See* SDCL 15-26A-80 (stating in pertinent part "[i]f an appellee fails to timely file his brief, he will not be heard at oral argument except by permission of the court").

[¶20.] Here, we decline to treat Eliason's failure to file a brief as a confession of error or as a victory for Appellants. Unlike other appeals involving one appellee, we have the benefit of a reply brief filed by Annabelle's and Olivia's for our review. Therefore, we will not summarily reverse the appeal on this ground and it will be decided on the merits.

[¶21.] **I. Whether the circuit court erred in denying Appellants' motion in limine to exclude evidence of Ruschenberg's abortion.**

[¶22.] Appellants argue that the circuit court erred in denying their motion in limine to exclude evidence of Ruschenberg's abortion. Appellants contend that this evidence is unfairly prejudicial under SDCL 19-12-3 (Rule 403) and that it irreparably tainted the jurors' opinions of Appellants.

[¶23.] Our review of evidentiary rulings is a "two-step process[.]" *Supreme Pork, Inc. v. Master Blaster, Inc.*, 2009 S.D. 20, ¶ 59, 764 N.W.2d 474, 491. "[E]videntiary ruling are only reversible 'when error is demonstrated *and* shown to

be prejudicial error.'" *Id.* (citation omitted). Accordingly, we first "determine whether the trial court abused its discretion in making an evidentiary ruling[.]" *Id.*; *JAS Enters., Inc. v. BBS Enters., Inc.*, 2013 S.D. 54, ¶ 21, 835 N.W.2d 117, 125 (stating that "[t]his applies as well to rulings on motions in limine") (quoting *Ferebee v. Hobart*, 2009 S.D. 102, ¶ 12, 776 N.W.2d 58, 62). "With regard to the rules of evidence, abuse of discretion occurs when a trial court misapplies a rule of evidence, not when it merely allows or refuses questionable evidence." *JAS Enters., Inc.*, 2013 S.D. 54, ¶ 21, 835 N.W.2d at 125 (quoting *State v. Asmussen*, 2006 S.D. 37, ¶ 13, 713 N.W.2d 580, 586). And, second, we determine "whether this error was a *prejudicial error* that 'in all probability' affected the jury's conclusion." *Supreme Pork, Inc.*, 2009 S.D. 20, ¶ 59, 764 N.W.2d at 491. This Court has previously said:

> The rulings of the trial court are presumptively correct; *we have no duty to seek reasons to reverse.* The *party alleging error* must show prejudicial error . . . . To show such prejudicial error[,] an appellant must establish affirmatively *from the record* that under the evidence the jury might and *probably would have returned a different verdict* if the alleged error had not occurred.

*Id.* ¶ 58 (quoting *Sander v. Geib, Elston, Frost Prof'l Ass'n*, 506 N.W.2d 107, 113 (S.D. 1993)).

[¶24.]    SDCL 19-12-3 (Rule 403) provides in pertinent part that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." "Rule 403 is not simply a 'more than, less than' comparison; the test is whether the probative value is *substantially* outweighed by the danger of unfair prejudice." *Supreme Pork, Inc.* 2009 S.D. 20, ¶ 55, 764 N.W.2d at 490. *See State v. Boe*, 2014 S.D. 29, ¶ 25, __N.W.2d __, __ (overruling erroneous language in *State v. Chamley*, 1997 S.D. 107, 568 N.W.2d 607, and stating that "[t]he correct

test, as stated in SDCL 19-12-3 (Rule 403), is whether the 'probative value is substantially outweighed by the danger of unfair prejudice . . .'"). "The party *objecting* to the admission of evidence *has the burden* of establishing that the trial concerns expressed in Rule 403 substantially outweigh probative value." *Supreme Pork, Inc.*, 2009 S.D. 20, ¶ 56, 764 N.W.2d at 490 (quoting *State v. Mattson*, 2005 S.D. 71, ¶ 20, 698 N.W.2d 538, 546).

[¶25.]    By admitting evidence of Ruschenberg's abortion, the circuit court cannot be said to have committed "a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable." *See id.* ¶ 57 (quoting *Hogen v. Pifer*, 2008 S.D. 96, ¶ 9, 757 N.W.2d 160, 163). The evidence of Ruschenberg's abortion had significant probative value to the factual disputes in the trial. When asked on cross-examination about the procedure, Ruschenberg could not recall when she had the abortion nor could she recall where the abortion clinic was located in Sioux City. Additionally, the evidence of Ruschenberg's abortion had probative value as evidenced by Ruschenberg's inclusion of the abortion in her complaint. In her complaint, Ruschenberg alleged that "[o]n or about August 2007, Ruschenberg discovered that she was pregnant due to Eliason's sexual assault of her. Ruschenberg told Eliason about it and he wrote a check to her and told her to go and get an abortion."

[¶26.]    As the circuit court noted, Ruschenberg's credibility was also at issue. Ruschenberg and Eliason's interactions following the alleged rape and prior to the abortion were essential to evaluate her credibility. Ruschenberg testified that she

approached Eliason about her pregnancy and Eliason told her that she had "options," including allowing Eliason and his wife to adopt the baby. Ruschenberg also testified that Eliason offered her $450 to pay for the abortion procedure. Eliason, however, testified that the $450 payment was an advance on her pay. Additionally, Ruschenberg testified at trial that at the abortion clinic, she was required to fill out various forms prior to the procedure. She testified that she indicated that the pregnancy was not the result of a rape. Such evidence was vital for the jury's consideration as to whether Ruschenberg's pregnancy was the result of a rape.

[¶27.] Finally, the evidence was probative for the jury in determining the extent of damage Ruschenberg suffered as a result of the alleged rape. Ruschenberg testified that the rape, her pregnancy, and the abortion all had an emotional and psychological effect on her. Therefore, the jury had to consider the pregnancy and abortion evidence when determining Ruschenberg's damages from the alleged rape.

[¶28.] Appellants cite to *Nichols v. American National Insurance Company* and *Nickerson v. G.D. Searle & Company* in support of their argument that evidence of Ruschenberg's abortion was unfairly prejudicial. *Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875 (8th Cir. 1998); *Nickerson v. G.D. Searle & Co.*, 900 F.2d 412 (1st Cir. 1990). In *Nichols*, a former employee sued her former employer, American National Insurance Company, for sexual harassment and constructive discharge in violation of Title VII of the Civil Rights Act of 1964. *Nichols*, 154 F.3d at 878. At trial, the district court permitted, over the employee's objections, American

National to introduce evidence that employee had undergone an abortion, which was against her religious beliefs. *Id.* The jury returned a verdict in favor of American National and the employee appealed claiming that several evidentiary rulings deprived her of a fair trial. *Id.*

[¶29.]     The Eighth Circuit Court of Appeals reversed. The Eighth Circuit held, among other things, that the district court erred in admitting evidence of the prior abortion because it "had very little probative value" and was not related to her employment history at American National. *Id.* at 885. Additionally, the Eighth Circuit noted that the abortion was remote in time having occurred in 1985, and that the employee was limited to evidence from 1991 to 1993. *Id.* The Eighth Circuit also determined that "[s]uch evidence tends to be highly prejudicial. That Nichols had had the abortion even though it was against her religion increased the likelihood that the jury would view her as immoral and not worthy of trust and reach its verdict on such basis." *Id.* The Eighth Circuit noted the district court focused on the fact that Nichols had disclosed the fact that she had an abortion herself, but stated that "she had had a duty to answer the interrogatory even if the answer were not admissible at trial[.]" *Id.*

[¶30.]     In *Nickerson*, an intrauterine device user brought a product liability suit against two manufacturers of the device. 900 F.2d at 414. Nickerson appealed an unfavorable jury verdict based on a number of issues, including the district court's ruling that Nickerson's counsel could not ask one of the manufacturer's experts about his previous work in abortion clinics and experiences in the field of abortion. *Id.* at 415, 418. The district court excluded such evidence because the

abortion evidence was not related to the issue of the expert's qualifications in intrauterine devices and it was unduly prejudicial. *Id.* The Court of Appeals affirmed. *Id.* at 419.

[¶31.]     Both *Nichols* and *Nickerson* are distinguishable from the present appeal. Unlike *Nichols,* where the former employee had a duty to answer the interrogatory regarding her abortion, Ruschenberg disclosed the allegation of the abortion in her complaint. Additionally, unlike the employee's abortion in *Nichols*, Ruschenberg's abortion was not remote in time and was integral to the claims asserted by Appellants. And in *Nickerson*, the expert's previous work in abortion clinics and experiences in the field of abortion were unrelated to the expert's qualifications regarding the expert's knowledge about intrauterine devices. Thus, such evidence was prejudicial.

[¶32.]     The evidence regarding Ruschenberg's abortion was relevant and probative to her claims against Annabelle's and Olivia's, including whether the torts were committed, whether it resulted in damages to Ruschenberg, the nature and extent of those damages, and the credibility of the witness. Accordingly, the circuit court did not abuse its discretion in denying Appellants' motion in limine to exclude evidence of Ruschenberg's abortion.[3]

---

3.     Furthermore, even if the circuit court abused its discretion in admitting evidence of Ruschenberg's abortion, Appellants cannot show that the circuit court's ruling was prejudicial error. *See Supreme Pork*, 2009 S.D. 20, ¶ 58, 764 N.W.2d at 491 (stating that "an appellant must establish affirmatively *from the record* that under the evidence the jury might and *probably would have returned a different verdict* if the alleged error had not occurred") (quoting *Sander*, 506 N.W.2d at 113). Indeed, the jury returned a verdict against not only Ruschenberg, but also her co-plaintiffs, Cornelius and

(continued . . .)

[¶33.] **II.** **Whether the circuit court erred in denying Appellants' motion for mistrial based upon Johnson's statement at trial.**

[¶34.] Appellants argue that the circuit court erred in denying their motion for mistrial. Appellants contend that not only was Johnson's statement regarding Eliason's criminal history false, but the statement was in direct violation of Annabelle's and Olivia's motion in limine, which was expanded by the circuit court to apply to all parties. Further, Appellants argue that the curative instruction provided by the circuit court was insufficient because "[t]he non-existence of criminal charges [was] just as unduly prejudicial as the existence of criminal charges."

[¶35.] "Trial courts have considerable discretion in granting or denying mistrials and determining the prejudicial effect of witness statements." *State v. Fool Bull*, 2008 S.D. 11, ¶ 10, 745 N.W.2d 380, 385. "Only when this discretion is clearly abused will this [C]ourt overturn the trial court's decision." *State v. Phair*, 2004 S.D. 88, ¶ 13, 684 N.W.2d 660, 665 (quoting *State v. Anderson*, 1996 S.D. 46, ¶ 21, 546 N.W.2d 395, 401). In order "[t]o justify the granting of a mistrial, an actual showing of prejudice must exist." *Id.* "Prejudicial error for purposes of determining whether error constitutes grounds for mistrial is error which in all probability must have produced some effect upon the jury's verdict and is harmful to the substantial rights of the party assigning it." *Id.*

---

Rensch, who were not involved in Ruschenberg's decision to have an abortion. Therefore, Appellants have failed to show prejudicial error in that "the jury might and probably would have returned a different verdict" had the evidence of Ruschenberg's abortion not been admitted. *See id.* (emphasis omitted).

[¶36.] Here, the record is clear that the circuit court granted Annabelle's and Olivia's motion in limine to exclude evidence of *Johnson's* prior criminal history and to exclude an alienation of affections lawsuit brought against Eliason. The record is devoid of any instance in which the circuit court excluded evidence regarding Eliason's criminal history, or lack thereof. Appellants claim the motion in limine was expanded to include all parties, but there is no record of a formal ruling by the circuit court precluding testimony regarding Eliason's criminal history.

[¶37.] Moreover, after considering Appellants' motion more thoroughly at a recess, the circuit court then admonished the jury as was requested by Appellants' counsel following Johnson's testimony. The admonishment instructed the jury to disregard Johnson's testimony regarding Eliason's criminal background and to base its conclusion solely on the evidence presented at trial. The circuit court also admonished the jury to "disregard any consideration of whether or not there were criminal charges filed, a trial or a conviction or acquittal." We presume that the jury understood and abided by these admonishments accordingly. *See State v. Dillon*, 2010 S.D. 72, ¶ 28, 788 N.W.2d 360, 369 (stating that we "presume that juries understand and abide by curative instructions"). Thus, the circuit court did not abuse its discretion in denying Appellants' motion for mistrial.

[¶38.] **III.** **Whether the circuit court erred in rejecting Appellants' proposed jury instructions regarding the "alter ego rule."**

[¶39.] Appellants argue that the circuit court erred when it rejected Appellant's proposed jury instructions regarding the "alter ego rule." Appellants assert that Eliason was "so dominant in" Annabelle's and Olivia's that liability for Eliason's acts would be imputed to the businesses under the "alter ego rule." To

support their argument, Appellants cite to the "alter ego rule" provided in *Benson v. Goble*, a case analyzed by this Court under the context of workers' compensation law: "[T]o find [the corporation] vicariously liable for the acts of its supervisor in the absence of notice, [the supervisor] must have been 'so dominant in the corporation that he could be deemed the alter ego of the corporation under the ordinary standards governing disregard of [the] corporate entity.'" *See* 1999 S.D. 38, ¶ 18, 593 N.W.2d 402, 406 (quoting 6 Larson, Larson's Workers' Compensation Law § 68.22 at 13-130). Appellants contend that the jury should have been instructed accordingly.

[¶40.]     In response, Annabelle's and Olivia's argue that Judge Riepel dismissed the intentional tort causes of action against the businesses. In her summary judgment order, Judge Riepel noted that counsel for Appellants acknowledged that the intentional tort causes of action were directed solely against Eliason and were not being asserted against Annabelle's and Olivia's. Annabelle's and Olivia's also point out that during trial, Judge Tiede did not grant Appellants leave to amend their complaint to include the intentional tort causes of action against the businesses,[4] nor did Judge Tiede vacate Judge Riepel's summary

---

4.     After extensive testimony was entered at trial, Appellants made a motion to amend their pleadings under SDCL 15-6-15(b) arguing that "[a] majority of the cross-examination has been on whether these events actually occurred or not. [Defendants] suffered no prejudice and the plaintiffs' case is still open at this time so this motion is timely and proper to be brought at this time." *See* SDCL 15-6-15(b) (providing in pertinent part that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings"). Judge Tiede denied Appellants' motion to amend their complaint to include claims that any intentional acts of Eliason should be attributed to the

(continued . . .)

judgment order. Annabelle's and Olivia's contend that any instruction regarding the "alter ego rule" would have been beyond the scope of issues raised by the pleadings. Additionally, Annabelle's and Olivia's argue that Eliason was not the "alter ego" of the businesses, and therefore, the circuit court correctly rejected any instructions as to the "alter ego rule."

[¶41.]     Here, the jury returned a verdict finding Eliason not liable for the alleged intentional torts. Thus, as a matter of law, the jury could not have found that Annabelle's and Olivia's were liable under the "alter ego rule." Our holdings on the first two appealed issues and the jury verdict are therefore dispositive on the issue of whether the jury should have been given instructions regarding the "alter ego rule." Appellants' assertion of error regarding its proposed "alter ego rule" jury instructions is therefore without merit.

## Conclusion

[¶42.]     The circuit court did not abuse its discretion in denying Appellants' motion in limine to exclude evidence of Ruschenberg's abortion or in denying Appellants' motion for mistrial based on Keith Johnson's statements at trial. Because our holdings on the first two appealed issues and the jury verdict are

businesses under the "alter ego rule." Judge Tiede determined that SDCL 47-34A-302 was applicable and that the only reason the trial was concerned with whether Eliason's conduct was in the ordinary course of business or authority of the businesses was because of the remaining claim asserted against Annabelle's and Olivia's—negligent infliction of emotional distress. Additionally, Judge Tiede acknowledged that it would be prejudicial and unfair to the defendants to, "at this late stage[,]" "shift the entire theory of the case again back to whether or not the acts of Mr. Eliason were in the ordinary course of business or within the authority of the company." Judge Tiede's denial of Appellants' motion to amend has not been appealed to this Court.

dispositive, Appellants' assertion of error regarding its proposed "alter ego rule" jury instructions is therefore without merit for our consideration.  We affirm.

[¶43.]        GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and WILBUR, Justices, concur.